**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

ORETHA B. MCINNIS,

        Plaintiff,

v.   ACTION NO. 2:11cv468

BAC HOME LOAN SERVICING, LP,

RECONSTRUST COMPANY, N.A., and

ALG TRUSTEE, L.L.C.,
*as Substitute Trustee*,

        Defendants.

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, by order of reference dated October 5, 2011.

This case was referred for a report and recommendation on Defendant ALG Trustee, L.L.C.'s ("ALG's") Motion to Dismiss (ECF No. 4), as well as the Motion to Dismiss (ECF No. 8) filed by Defendants BAC Home Loans Servicing, LP ("BOA")[1] and Reconstruct Company, N.A. ("Reconstruct"). For the reasons stated herein, the Court recommends that Defendants' Motions to Dismiss be GRANTED.

---

[1] BAC Home Loans Servicing, L.P. merged into Bank of America, N.A. on July 1, 2011.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On January 9, 2007, Plaintiff took out a loan in the amount of $114,000.00 secured by property on Gemstone Lane in Virginia Beach, Virginia ("the Property"). Compl. ¶¶ 1-2, ECF No. 1-1. BOA, the lender and servicer of the Loan, advertised on its website that it actively participated in the Home Affordable Modification Program ("HAMP").[2] Compl. ¶¶ 2-3. Plaintiff had difficulty making her payments, and applied for a HAMP loan modification in 2009. Compl. ¶ 6. BOA found Plaintiff to be "initially eligible" for a modification, and sent Plaintiff a Trial Period Plan Agreement ("TPP Agreement"). Compl. ¶ 6. The TPP Agreement provided for a three-month trial period of modified mortgage payments, which could lead to a permanent HAMP modification. Compl. ¶¶ 7-8. The TPP agreement stated, "[i]f I am in compliance with this Trial Period Plan [] and my representations in Section 1 continue to be true in all material respects, the Servicer will provide me with a Home Affordable Modification Agreement. . . ." Compl. ¶ 8. Plaintiff made the payments described in the TPP Agreement, as well as additional payments beyond the trial period. Compl. ¶ 13. Plaintiff did not receive a permanent loan modification, or notice of ineligibility for a permanent loan modification, prior to the expiration of her trial period. Compl. ¶ 15. BOA commenced foreclosure proceedings against the Property in July 2011, and the Property was scheduled to be sold on July 27, 2011. Compl. ¶ 16.

---

[2] "The Department of Treasury established the Home Affordable Modification Program ("HAMP") pursuant to Sections 101 and 109 of the Emergency Economic Stabilization Act of 2008. Section 109 of the Act was later amended by Section 7002 of the American Recovery and Reinvestment Act of 2009. . . . The program assists borrowers who are delinquent on the mortgages for their primary residence or facing imminent risk of default. . . . Under the program, mortgage loan servicers enter into an agreement with the Federal National Mortgage Association ("Fannie Mae") whereby the servicers agree to perform loan modification and foreclosure prevention services in exchange for incentives provided by the Department of Treasury. Borrowers in risk of defaulting on their mortgages can then apply to the program and the mortgage servicer provides the modification or prevention services to the borrower. As a condition of participating in the program, servicers must comply with guidelines and procedures issues by the Department of Treasury. Escobedo v. Countrywide Home Loans, Inc., No. 09-cv-1557, 2009 U.S. Dist. Lexis 117017, at *1 (S.D. Cal. Dec. 15, 2009)." Winn v. Chase Mortg. Servs., No. 2:10cv395, 2010 U.S. Dist. LEXIS 143041, at *5-7 (E.D. Va. Oct. 29, 2010); see Commitment to Purchase Financial Instrument and Servicer Participation Agreement, available at https://www.hmpadmin.com/portal/programs/servicer.jsp; see also Home Affordable Modification Program: Overview, htpps://www.hmpadmin.com/portal/programs/hamp.jsp (last visited January 13, 2012).

Plaintiff filed a Bill of Complaint and Petition for Preliminary Injunction on July 22, 2011, in the Circuit Court for the City of Virginia Beach, Virginia, alleging breach of contract, breach of the implied duty of good faith and fair dealing, negligent or willful mishandling of Plaintiff's loan modification application, and tortious interference with a contract. Notice of Removal Ex. A ("Compl."), ECF No. 1-1. Plaintiff seeks a preliminary injunction to enjoin Defendants from instituting foreclosure proceedings on the Property. Plaintiff asks the Court to order BOA to grant Plaintiff's loan modification or, alternatively, to properly process the loan modification application. Lastly, Plaintiff is seeking one million dollars in actual and punitive damages. Id. at 7.

Defendants removed the action to this court on August 18, 2011. Notice of Removal, ECF No. 1. On August 25, 2011, Defendant ALG filed a Motion to Dismiss (ECF No. 4) pursuant to Federal Rule of Civil Procedure 12(b)(6). On the same day, Defendants BOA and Reconstruct filed a Motion to Dismiss (ECF No. 8) pursuant to Rule 12(b)(6). No opposition has been filed to either motion. Accordingly, both motions are ripe for determination.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(h)(3) provides for the dismissal of an action at any time the Court determines that it lacks subject matter jurisdiction. Unless a matter involves an area over which federal courts have exclusive jurisdiction, a federal court has subject matter jurisdiction over a matter only when the matter "aris[es] under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331 (federal question jurisdiction), or if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states," 28 U.S.C. § 1332(a)(1) (diversity jurisdiction).

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint; it " 'does not

3

resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999) (quoting Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)). In deciding such a motion, a court must first be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. The Court must accept as true well-pleaded allegations and construe them in favor of the non-moving party. Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994).

While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions," because "a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive a motion to dismiss, the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." Id. The plausibility standard requires more than a showing of "a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). In other words, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

To obtain a preliminary injunction, a plaintiff must establish "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." Winter v. NRDC, 555 U.S. 7, 20 (2008); Real Truth About Obama, Inc. v. REC, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 130 S. Ct. 2371 (2010).

### III. ANALYSIS

In addressing Defendants' Motions to Dismiss, the Court finds that the Complaint fails to

state a claim for relief and should be dismissed pursuant to Rule 12(b)(6).

      A.      **HAMP Does Not Create a Private Right of Action**

Plaintiff has alleged BOA committed negligence per se when it violated the HAMP guidelines while processing Plaintiff's loan modification application. Compl. ¶¶ 31-38. Specifically, Plaintiff contends BOA was required to comply with the HAMP statute, "including but not limited to, the timely and accurate processing of the Plaintiffs' modification application, keeping in contact with the borrower and their agents during the modification process, and timely notification of Plaintiff if she was no longer being reviewed or was denied a modification." Id. ¶ 34. This Court has consistently held there is no private right of action for individual borrowers to assert claims against lenders for violations of HAMP. See Winn v. Chase Mortg. Servs., No. 2:10cv395, 2010 U.S. Dist. LEXIS 143041 (E.D. Va. Oct. 29, 2010) (holding plaintiff had no private right of action to enforce HAMP regulations); Pennington v. PNC Mortg., No. 2:10cv361, 2010 U.S. Dist. LEXIS 143157 (E.D. Va. Aug. 11, 2010) (same); Mosley v. Wells Fargo Bank, N.A., No. 2:11cv268, 2011 WL 3439243 (E.D. Va. Aug. 5, 2011); Asbury v. America's Servicing Co., No. 2:11cv99, 2011 WL 3555846 (E.D. Va. July 13, 2011); Paine v. Wells Fargo Bank, N.A., No. 2:11cv89, 2011 WL 3236390 (E.D. Va. July 12, 2011); Sherman v. Litton Loan Servicing, No. 2:10cv567, 2011 U.S. Dist. LEXIS 71756, at *14-17 (E.D. Va. July 1, 2011); Melton v. Suntrust Bank, 780 F. Supp.2d 458, 459 (E.D. Va. 2011); Bourdelais v. J.P. Morgan Chase, No. 3:10cv670, 2011 U.S. Dist. LEXIS 35507 (E.D. Va. Apr. 1, 2011) (collecting cases); Fowler v. Aurora Home Loans and Fannie Mae, No. 2:10cv623, 2011 U.S. Dist. LEXIS 73344 (E.D. Va. Mar. 31, 2011). Therefore, Plaintiff's allegations that BOA committed negligence per se when it violated HAMP guidelines while processing Plaintiff's loan application should be DISMISSED.

B.  Court Retains Diversity Jurisdiction Over State Law Claims

The Court must next determine whether, after dismissing the allegations based on the federal HAMP statute, it retains diversity jurisdiction over the remaining state law claims.[3] Defendants removed this case on the basis of both the court's diversity jurisdiction and its federal question jurisdiction. Notice of Removal. The Complaint establishes that the amount in controversy is $1,000,000. Compl., Prayer for Relief. The Notice of Removal states Plaintiff is a resident of Virginia, and Defendant BOA is a citizen of North Carolina because its articles of association designate the bank's main office in North Carolina. See 28 U.S.C. § 1348; Wachovia Bank v. Schmidt, 546 U.S. 303, 307 (2006) (holding "[a] national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located"); Hill v. Bank of Am. Corp., No. 1:06cv804GE, 2006 WL 1518874, at *1 (N.D. Ga. May 30, 2006) ("[Bank of America, N.A.] . . . is a national banking association located in the State of North Carolina, as designated in its articles of association."). There are no representations in the record as to the citizenship of Reconstruct or ALG Trustee (collectively "the Substitute Trustees"). Defendant BOA argues in the Notice of Removal that the citizenship of the Substitute Trustees is immaterial, because they are nominal defendants or fraudulently joined. Notice of Removal 4. Presumably, Reconstruct, ALG Trustee, or both, are citizens of Virginia. The complete diversity requirement is satisfied "when no party shares common citizenship with any party on the other side." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999). The issue becomes whether the Substitute Trustees are, as Defendants assert (Notice of Removal 4-6),

---

[3] Similar cases, where borrowers have sued lenders for failure to modify loans following the submission of a HAMP application, have been remanded to the state court where diversity was not a basis for removal. See Mosley v. Wells Fargo Bank, N.A., No. 2:11cv268, 2011 WL 3439243 (E.D. Va. Aug. 5, 2011); Asbury v. America's Servicing Co., No. 2:11cv99, 2011 WL 3555846 (E.D. Va. July 13, 2011) (dismissing HAMP claims and remanding the remaining state law claims); Paine v. Wells Fargo Bank, N.A., No. 2:11cv89, 2011 WL 3236390 (E.D. Va. July 12, 2011) (same); Melton v. Suntrust Bank, 780 F.Supp.2d 458 (E.D. Va. 2011) (remanding case for lack of subject matter jurisdiction).

fraudulently joined or nominal defendants whose citizenship should not factor into the diversity analysis. See Navarro Savings Ass'n v. Lee, 446 U.S. 458, 460-61 (1980) (nominal party); Hartley v. CSX Transp., 187 F.3d 422, 424 (4th Cir. 1999) (fraudulently joined party).

To establish the Substitute Trustees were fraudulently joined, Defendants must show either that Plaintiff cannot establish a cause of action in state court against the Substitute Trustees, or that there has been outright fraud in Plaintiff's pleading of jurisdictional facts. See Payne v. Bank of Am., No. 3:09cv80, 2010 U.S. Dist. LEXIS 12076, at *8 (W.D. Va. Feb. 11, 2010) (citing Baltimore Cnty. v. Cigna Healthcare, 238 F. App'x 914, 920 (4th Cir. 2007)). Plaintiff has not alleged any jurisdictional facts in the Complaint, and the jurisdictional facts gleaned from the record do not appear to be in dispute. Accordingly, the Court will focus on whether Plaintiff can establish a state law cause of action against the Substitute Trustees.

Defendants bear the heavy burden of showing that Plaintiff cannot establish a state law claim against the Substitute Trustees "even after resolving all issues of law and fact in [Plaintiffs'] favor." See Wygal v. Litton Loan Servicing LP, No. 5:09cv322, 2009 U.S. Dist. LEXIS 73183, at *2 (S.D.W.Va. Aug. 18, 2010) (quoting Hartley, 187 F.3d at 423). The fraudulent joinder standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Wygal, 2009 U.S. Dist. LEXIS 73183, at *2 (quoting Mayes, 198 F.3d at 464). Accordingly, "[a] claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted." Marshall v. Manville Sales Corp., 6 F.3d 229, 233 (4th Cir. 1993); see also Hartley, 187 F.3d at 426 ("Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends."). Further, in determining "whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead 'consider the entire record, and determine the basis

7

of joinder by any means available.' " Mayes, 198 F.3d at 464 (quoting AIDS Counseling and Testing Ctrs. v. Group W Television, Inc., 903 F.2d 1000, 1004 (4th Cir.1990)).

Courts have diverged on the issue of whether substitute trustees are properly joined parties whose citizenship should be taken into account in the diversity analysis. See Sherman, 2011 U.S. Dist. LEXIS 71756, at *14-17 (collecting cases). When determining a substitute trustee's status for diversity purposes, the Court should consider "the nature of the actions taken by the trustee, if any, and the type of relief sought against the trustee, if any." Id. at *17. In Sherman, the plaintiffs requested a loan modification, which was denied by the lender. 2011 U.S. Dist. LEXIS 71756, at *4. When plaintiffs received notification from the substitute trustee that a foreclosure sale of the home would occur, plaintiffs filed an action in state court to prevent the foreclosure, alleging breach of contract and negligence claims similar to those alleged in the instant Complaint. Id. The court held that, since plaintiff raised no issues of title in the complaint, claimed no misconduct by the substitute trustee, and requested no relief that only the substitute trustee could provide, the substitute trustee was improperly joined. Id. at *18-19; c.f. Forbes v. Wells Fargo, No. 4:10cv160 (E.D. Va. Mar. 18, 2011) (finding the substitute trustee was not fraudulently joined in a complaint almost identical to the instant Complaint).

Similarly, in Wygal, the plaintiff alleged the substitute trustee was a necessary party to the action, because the substitute trustee had been "directed to foreclose upon the property and refuse[d] to postpone or halt the foreclosure." 2009 U.S. Dist. LEXIS 73183, at *3. The plaintiff filed suit alleging a lender violated the West Virginia Consumer Credit Protection Act by continuing to contact plaintiff directly after notification that plaintiff had hired an attorney to represent her with respect to her outstanding debt. Id. at *1. The court noted the substitute trustee's obligation under West Virginia law was to sell the trust property when directed to by

8

the trust-creditor, and the substitute trustee had no duty to consider the objections of the plaintiff, or to postpone the sale at her request. Id. at *4. Finding the defendant met its burden of demonstrating a West Virginia state court would dismiss the claims against the substitute trustee, the court held the substitute trustee was fraudulently joined and not to be factored into the diversity analysis. Id. at *5; see also Dempsey v. Transouth Mort. Corp., 88 F. Supp. 2d 482, 484 (W.D.N.C. 1999) (holding that where a complaint contained no factual allegations with respect to the substitute trustee, other than their place of citizenship, the substitute trustee's citizenship was not considered for purposes of diversity).

While the instant Complaint focuses on the actions of BOA, it contains the following allegations regarding the Substitute Trustees:

> 39. Defendant Substitute Trustee, as appointed agents for Defendant BOA, are bound by the same contractual terms as Defendant BOA concerning foreclosure on the property in question.
>
> 40. Defendant Substitute Trustee breached the contract established between Defendant BOA and Plaintiff by following through with foreclosure proceedings without first receiving certification from Defendant BOA.

Compl. ¶¶ 39-40. Plaintiffs' allegations that the Substitute Trustees breached a contract by "following through with foreclosure proceedings" (Compl. ¶ 40) must be read in conjunction with Plaintiffs' request for a preliminary injunction, without which, "Plaintiff will lose her home in a foreclosure sale and suffer serious detriment to her credit score" (Compl. ¶ 48). The Court presumes, though the record is unclear, that a foreclosure sale on the Property has not taken place.

The Court finds Plaintiff cannot establish a breach of contract claim against the Substitute Trustees "even after resolving all issues of law and fact in [Plaintiff's] favor." See Wygal, 2009

9

U.S. Dist. LEXIS 73183, at *2.  First, the Complaint acknowledges the Substitute Trustees are not parties to the contract they allegedly breached. Compl. ¶ 39.  The Complaint asserts the Substitute Trustees are "the appointed agents for Defendant BOA," and "bound by the same contractual terms as BOA." Id.  To the contrary, the powers of the substitute trustees "'are limited and defined by the instrument under which it acts,' meaning the Deed of Trust to the Property." Payne, 2010 U.S. Dist. LEXIS 12076, at *19 (quoting Powell v. Adams, 18 S.E.2d 261, 262-63 (Va. 1942).  The Deed of Trust outlines the trustees' duties "if Lender invokes the power of sale." BOA and Reconstruct's Mem. in Support of Mot. to Dismiss ("BOA Mem."), Ex. A p. 14, ECF No. 9-1.[4]  The Substitute Trustees have no role in determining whether or not Plaintiff could be granted a permanent loan modification, which is the subject of the contract the Substitute Trustees have allegedly breached. See BOA Mem., Exs. A & B.  Nor do the Substitute Trustees have any role in determining when to foreclose on the Property, the action allegedly causing the breach of contract. Id.  The Substitute Trustees' only role with respect to the Plaintiff will be as substitute trustee if and when a foreclosure of the Property takes place.  Moreover, the Complaint seeks relief only from BOA.  The Court finds Plaintiff has no plausible cause of action against the Substitute Trustees in state court, and the Substitute Trustees were improperly joined.  Therefore, the Court retains diversity jurisdiction, as there is complete diversity among the real parties to the Complaint, and the Court will address Defendants' motions to dismiss the remaining state law claims.

---

[4] The Court may consider the Note and Deed of Trust attached to Defendants' Motion to Dismiss. See Demetry v. Lasko Prods., 284 Fed. Appx. 14, 15 (4th Cir. 2008); Gasner v. Cty. of Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995) ("[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment.").

### C. State Law Claims

The Court will apply Virginia law in its analysis of Plaintiff's state law claims. See Felder v. Casey, 487 U.S. 131, 151 (1988) ("When a federal court exercises diversity or pendent jurisdiction over state-law claims, 'the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.'"); Guaranty Trust Co. of N.Y. v. York, 326 U.S. 99, 109 (1945); Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).

#### 1. Breach of Contract

Plaintiff's breach of contract claims fail because Plaintiff has failed to allege the existence of a valid contract to permanently modify her loan. Under Virginia law, a party claiming breach of contract must establish three elements to prevail: "(1) a legally enforceable obligation of a defendant to a plaintiff, (2) the defendant's violation or breach of that obligation, and (3) injury or damage to the plaintiff caused by the breach of obligation." Sunrise Continuing Care, LLC v. Wright, 671 S.E.2d 132, 135 (Va. 2009). Plaintiff has not alleged facts sufficient to establish the first element – that a valid and enforceable contract to modify her loan existed, and that the parties mutually agreed the modification was effective. See Stanley's Cafeteria Inc. v. Abramson, 306 S.E.2d 870, 873 (Va. 1983) (holding an agreement to modify a contract must be proven by "clear, unequivocal and convincing evidence, direct or implied"); Montagna v. Holiday Inns, Inc. 269 S.E.2d 838, 844 (Va. 1980) (internal citations omitted) (to establish a valid contract, there must be "complete agreement which requires acceptance of an offer, as well as valuable consideration.").

In support of her argument that a valid contract was formed, Plaintiff alleges BOA offered to modify Plaintiff's loan when it sent Plaintiff the TPP Agreement. Compl. ¶ 17.

Plaintiff further alleges she accepted BOA's offer when she executed the TPP Agreement, and returned it to BOA along with supporting documentation. Id. ¶ 18. Alternatively, Plaintiff asserts that she made an offer to BOA when she returned the executed TPP Agreement, and BOA accepted her offer when it accepted her TPP payments. Id. ¶ 19. To the extent the contract was conditioned on BOA reviewing Plaintiff's application and finding Plaintiff qualified for the modification, Plaintiff asserts BOA waived this condition by not timely raising it. Id. ¶ 22. Plaintiff contends she gave consideration for this contract by making payments pursuant to the TPP Agreement, as well as submitting financial documentation and legally binding representations to BOA. Id. ¶ 20. Consequently, Plaintiff claims a valid contract to permanently modify Plaintiff's loan was formed (Id. ¶ 18, 21), which BOA breached when it failed to convert Plaintiff's TPP Agreement into a permanent loan modification. Id. ¶ 23. Plaintiff further asserts the Substitute Trustees breached this contract to modify Plaintiff's mortgage by following through with foreclosure proceedings. Id. ¶¶ 39-40.

Plaintiff's allegations of a valid contract to permanently modify her loan are not supported by the facts. When a loan modification is contemplated, the borrower *offers* the application to the lender, which the lender can either accept or reject after a determination of the borrower's eligibility. See Kimrey v. Am. Bankers Life Assurance Company of Florida, 2008 U.S. Dist. LEXIS 23060, at *6 (W.D. Va. Mar. 20, 2008). Similarly, a lender's prequalification of a borrower does not obligate the lender to extend or modify a loan. Jefferson v. Briner, Inc., 2006 U.S. Dist. LEXIS 41423, at *18-19 (E.D. Va. June 21, 2006). The facts alleged in the Complaint do not support Plaintiff's conclusion that the parties entered into a contract to permanently modify her loan.

Further, Plaintiff relies entirely on the TPP Agreement and HAMP to establish that BOA

agreed to permanently modify her loan. Id. at ¶¶ 6-12. As discussed above, there is no private right to enforce HAMP provisions. In addition, the Court takes judicial notice of the fact that HAMP Guidelines "guarantee only that an eligible borrower will be evaluated for a loan modification," and do not require mortgage servicers to modify loans. See Pennington, 2010 U.S. Dist. LEXIS 143157, at *13 (citations omitted). Plaintiff is left with the terms of the TPP Agreement. In essence, Plaintiff asserts that, pursuant to the TPP Agreement, a permanent loan modification would automatically be implemented following the trial period unless BOA took certain steps to prevent it. Id. at ¶¶ 8-9, 22. To the contrary, the terms of the TPP Agreement clearly state there will be no permanent modification unless certain events occur prior to the expiration of the trial period:

> F. *If prior to the Modification Effective Date,* (i) the Servicer does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of the Plan; or (iii) the Servicer determines that my representation in Section 1 are no longer true and correct, *the Loan Documents will not be modified and this Plan will terminate.* In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and
>
> G. *I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until* (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

BOA Mem. Ex. C, ECF No. 9-3 (emphasis added). First, Plaintiff does not allege she met the conditions required to qualify for a permanent loan modification. Secondly, the Complaint

13

establishes that Plaintiff "received neither the tender of a permanent loan modification that complied with HAMP rules, nor notification of ineligibility prior to the expiration of her trial period." Compl. ¶ 15. According to Plaintiff's own allegations, she did not receive a fully executed copy of the modification agreement, a condition necessary to modifying her original loan under the terms of the TPP Agreement.

Without establishing a valid contract existed, Plaintiff's claims for breach of that contract must fail. Therefore, Plaintiff's claim that Defendants breached their contract to modify Plaintiff's first mortgage by failing to convert the TPP Agreement into a permanent HAMP modification should be DISMISSED.[5]

### 2. Breach of Implied Covenant of Good Faith and Fair Dealing

Next, Plaintiff asserts BOA breached the implied covenant of good faith and fair dealing created by the Note and Deed of Trust by: "(i) falsely assuring the Plaintiff about the status of the HAMP loan modification, (ii) placing the Plaintiff on a TPP and accepting her payments while leading her to believe that a permanent modification was forthcoming and then never producing a modification, (iii) falsely assuring Plaintiff that the Home would not be sold, and (iv) failing to meet governmental prerequisites for the foreclosure of the home." Id. at ¶ 28. Virginia courts have recognized an implied covenant of good faith and fair dealing in certain contracts. See

---

[5] To the extent Plaintiff is alleging a verbal contract to permanently modify her loan exists, such a contract would be barred in Virginia by the statute of frauds. Mem. 14-16. Plaintiff's first lien mortgage necessarily falls within the statute of frauds as it relates to the purchase of real estate and the contract would not be performed within one year. See Va. Code Ann. § 11-2(6) (requiring contracts related to the purchase of real estate to be in writing), and § 11-2(8) (requiring contracts that are not to be performed within one year to be in writing). Consequently, any contract to modify the mortgage lien would also need to be in writing to satisfy the statute of frauds. See Lindsay v. McEnearney Assocs., 531 S.E.2d 573, 575-76 (Va. 2000) (holding when "a contract is required to be in writing pursuant to Code § 11-2, any modification to that contract must also be in writing"); see also Locke v. Wells Fargo Home Mortg. & Wells Fargo Bank, N.A., No. 10-60286, 2010 U.S. Dist. LEXIS 126140, at *10-11 (S.D. Fl. Nov. 30, 2010) (holding Florida's statute of frauds bars a breach of contract claim for a loan modification pursuant to HAMP); Newgent v. Wells Fargo Bank, N.A., No. 09cv1525, 2010 U.S. Dist. LEXIS 128476, at *13 (S.D. Cal. March 2, 2010) (holding "forbearance agreements altering a mortgage are covered by [California's] statute of frauds"); Safford v. Precision Funding, No. 09-14925-BC, 2010 U.S. Dist. LEXIS 10884, at *13 (E.D. Mich. Feb. 9, 2010) (holding breach of alleged oral representation by loan servicer was barred by Michigan's statute of frauds).

Wards Equip. v. New Holland N. Am., 254 Va. 379, 385 (1997); Pennsylvania Life Ins. Co. v. Bumbrey, 665 F. Supp. 1190, 1195 (E.D. Va. 1987); see also *Restatement (Second) of Contracts* § 205 (1981). Virginia courts have also held that a breach of this duty does not give rise to an independent tort, but only to a cause of action for breach of contract. Charles E. Brauer Co. v. NationsBank of Va., N.A., 251 Va. 28, 33 (1996). Further, where parties to a contract create valid and binding rights, the implied covenant of good faith and fair dealing is inapplicable to those rights. See Ward's Equip., Inc. v. New Holland N. Am., 254 Va. 379, 385 (1997); NationsBank of Virginia, N.A. v. Mahoney, 455 S.E.2d 5, 7-8 (Va. 1995); Skillstorm, Inc. v. Elec. Data Sys., 666 F. Supp. 2d 610, 620 (E.D. Va. 2009) (holding "no implied duty arises with respect to activity governed by express contractual terms"). The implied covenant cannot "rewrite[e] an unambiguous contract in order to create terms that do not otherwise exist." Ward's, 493 S.E.2d at 520.

Plaintiff is alleging BOA's actions with regard to the negotiation of a loan modification breached implied duties created by the Note and Deed of Trust. Neither the Note nor the Deed of Trust creates a duty on the part of BOA to facilitate loan modification. See BOA Mem. Exs. A & B. In fact, the Deed of Trust specifically allows BOA to foreclose on the Property if loan payments were not made. See BOA Mem. Ex. A, § 1, 9. Plaintiff admits she was "experiencing hardships that caused her to have difficulty making monthly payments on her mortgage." Compl. ¶ 5. Plaintiff cannot employ the implied duty of good faith and fair dealing to create obligations with respect to loan modification that were not present in the underlying contracts. Therefore, Plaintiff's assertion that BOA breached the covenant of good faith and fair dealing contained in the Note and Deed of Trust, by leading her to believe she would receive a loan modification and then instituting foreclosure proceedings, does not state a valid cause of action.

Plaintiff is attempting to recast BOA's alleged HAMP violations as violations of the duty of good faith and fair dealing. Courts have routinely dismissed similar claims brought under the auspices of a violation of the duty of good faith and fair dealing. See Parks v. BAC Home Loan Servicing, LP, __ F. Supp. 2d __, 2011 WL 5239340 (E.D. Va. Nov. 1, 2011) (dismissing implied duty of good faith and fair dealing claim "as it is merely another attempt to recast the HAMP claim"); Young v. Wachovia Mortg. Co., 2011 WL 6934110, at *4 (D. Colo. Dec. 30, 2011) (holding Plaintiffs' breach of good faith and fair dealing claim "seeks to impose new duties upon Defendants and grant Plaintiff[s] new rights relating to the [HAMP] modification of the loan's original terms."); Akintunji v. Chase Home Finance, L.L.C., Civ. Action No. H-11-389, 2011 WL 2470709, at *4 (S.D. Tex. June 20, 2011) (holding alleged failure to assist with the HAMP program cannot support a claim for breach of duty of good faith and fair dealing); Singh v. Wells Fargo Bank, No. 1:10cv1569, 2011 WL 66167, at *7 (E.D. Cal. Jan 7, 2011) (holding plaintiff's allegations that bank's foreclosure after accepting payments under modified terms constituted bad faith was "an attempt to plead around the lack of private cause of action for HAMP violations"). Plaintiff has not alleged any action by the Defendants that constitutes a breach of a duty created by the Deed of Trust or the Note. Therefore, Plaintiff's claim for breach of the covenant of good faith and fair dealing should be DISMISSED.

### 3. Tortious Interference

In Plaintiff's final claim, Plaintiff alleges Defendants' conduct in proceeding with foreclosure of the Property constitutes tortious interference with the business relationship between the "note-holder" and Plaintiff, because both the note-holder and Plaintiff would gain economic benefit through the completion of a loan modification. Compl. ¶¶ 41-43. While Plaintiff appears to be alleging tortious interference with the contract to modify Plaintiff's loan,

she could be alleging tortious interference with the original Note or Deed of Trust. Regardless, the note-holder in this case is BOA, and each of these contracts is between BOA and Plaintiff. Thus, it appears, Plaintiff is alleging BOA interfered with its own contract. In Virginia, to make a prima facie showing of tortious interference, Plaintiffs must show: (1) the existence of a valid contractual relationship or business expectancy, (2) knowledge of the relationship or expectancy on the part of the interferor, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the party whose relationship or expectancy has been disrupted. Rappahannock Pistol & Rifle Club, Inc. v. Bennett, 546 S.E.2d 440, 443 (Va. 2001). A "person cannot be liable for interfering with his own contract." King & King Chartered v. Harbert Int'l, Inc., 503 F.3d 153, 157 (D.C. Cir. 2007). Instead, the perpetrator must intentionally and improperly interfere with performance of "a contract [] between another and a third person." See Chaves v. Johnson, 335 S.E. 2d 97, 102 (Va. 1985) (citing *Restatement (Second) Torts* § 766 (1977)). BOA cannot be liable for interfering with a contract to which it was a party. In addition, for the reasons stated in the preceding paragraphs, Plaintiff has failed to allege a valid contract to modify Plaintiff's loan existed. Accordingly, Plaintiff's claim of tortious interference should be DISMISSED.

### 4. Preliminary Injunction

Lastly, Plaintiff has asked for a preliminary injunction to "preserve the status quo until the complaint could be reviewed." Compl. ¶ 44. The Complaint is now being reviewed, and the undersigned is recommending that the Complaint be dismissed. Plaintiff has failed to establish that she is likely to succeed on the merits, the first prong necessary for obtaining a preliminary injunction. See Winter v. NRDC, 555 U.S. 7, 20 (2008). Consequently, Plaintiff's request for a preliminary injunction should be DENIED.

## IV. RECOMMENDATION

For the above stated reasons, the Court recommends that Defendants' Motions to Dismiss be GRANTED.

## V. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(c):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this second amended report to the objecting party, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a *de novo* determination of those portions of this Report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984), cert. denied, 474 U.S. 1019 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

                                                                                /s/
                                                         Tommy E. Miller
                                        United States Magistrate Judge

Norfolk, Virginia
January 13, 2012

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Heath J. Thompson, Esq.
Rachel E. Wentworth, Esq.
Heath Thompson, P.C.
3770 Progress Rd.
Norfolk, VA 23502

Erin Q. Ashcroft, Esq.
McGuire Woods LLP
101 W. Main St.
Suite 9000
Norfolk, VA 23510

Dean L. Robinson, Esq.
Atlantic Law Group LLC
803 Sycolin Road
Suite 301
Leesburg, VA 20175

Fernando Galindo, Clerk

By_____
Deputy Clerk
January 13, 2012